# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                             No. 1:20-cr-00688-WJ

JOSE MENDOZA

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO STAY FORFEITURE PROCEEDINGS
### and
## PROTECTIVE ORDER AS TO DEFENDANT'S CLAIMS FORMS

**THIS MATTER** comes before the Court upon Defendant Jose Mendoza's Motion to Stay Forfeiture Proceedings (the "Motion"). Doc. 61. For the reasons discussed in this Memorandum Opinion and Order, the Court finds that Defendant's predicament does not warrant a stay of the forfeiture proceedings at issue, but that, in the interest of Defendant's Constitutionally sanctified right to abstain from self-incrimination, his statements made in response to the Government's Seized Asset Claim form pursuant to 18. U.S.C. § 983(2) (the "claims forms") are protected in accordance with the below order.

## BACKGROUND

On February 25, 2020, Defendant Jose Mendoza was indicted by a grand jury on conspiracy in violation of 21 U.S.C. § 846, distribution of 28 grams and more of cocaine base in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), aiding and abetting in violation of 18 U.S.C. § 2, and use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b). Doc. 1; Doc. 3. An arrest warrant was issued to the United States Government on February 26, and Defendant was arrested on February 27. Doc. 3. During the arrest, an appraised $173,182 in firearms, magazines, ammunition, vehicles and cash was seized and is now subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 1956(c)(7)(D) and 1961(1)(D), as well as 21 U.S.C. §§ 841, 881(b), 881(a)(11) and 881 (a)(6). *See* Doc. 61 at 2; Doc. 61-1 at 1-2. Following the arrest, an additional $30,162.63 was seized from ZIA Credit Union pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7) and 1961(1), as well as 21 U.S.C. §§ 881(a)(6) and 881(b). *See* Doc.61-1 at 6-13.

In April of 2020, Defendant was given notice of the Government's intent to proceed civilly to forfeit Defendant's ownership rights as to the seized funds and property. *See* Doc. 61-1. In said correspondence, Defendant was notified of five options he had with respect to the forfeiture:

(1)     Petition the Government within 30 days seeking the remission of the forfeiture. Petition must describe the property involved, identify the date and place of the seizure, include all facts Defendant believes may warrant relief from forfeiture, and include proof of Defendant's interest in or claim to the property.

(2)     Make an offer in compromise to the Government in the form of a monetary settlement, which Government may accept or reject.

(3)     Abandon the property or state no claim to or interest therein.

(4)     Request a referral of the matter to the U.S. Attorney, who will have the authority to file a forfeiture action against the property in federal court, by completing a Seized Asset Claim form requiring Defendant to identify the assets in which his interest is claimed, state his interest in such property, and make such statements under oath, subject to penalty of perjury.

(5)     Take no action, authorizing the Government to commence forfeiture action.

*See* Doc. 61-1. Defendant now contends that 18. U.S.C. § 983(2), the statutory basis of the requirement that he as claimant identify the property and his interests in the property subject to forfeiture, is unconstitutional as applied to his circumstances, as to respond to the Government in any way sufficient to secure the property would violate his Fifth Amendment right against compulsory self-incrimination with respect to the concurrent criminal proceedings against him. *See* Doc. 61 at 2-3. The Government responds by (1) distinguishing this case, an administrative forfeiture proceeding, from a civil proceeding,[1] and states that the Court accordingly lacks jurisdiction at this time to grant Defendant his requested relief; and (2) alleging a lack of factual support for the contention that stating an ownership interest in seized property could inadvertently provide evidence against Defendant with respect to his pending criminal proceedings. Doc. 61 at 2-3.

## LAW

The Government may not sanction an individual for asserting a Constitutional privilege against forced self-incrimination for the purposes of compelling testimony. *Lefkowitz v. Cunnigham*, 431 U.S. 801, 806 (1977). The Sixth Circuit has held that "the forfeiture penalty is closely related to a criminal sanction," and, specifically, the Supreme Court has found that civil forfeiture actions are included as a form of government sanction under the Eighth Amendment's Excessive Fines Clause. *United States v. U.S. Currency*, 626 F.2d 11, 15 (6th Cir. 1980) (internal citations omitted), cert. denied, 449 U.S. 993 (1980); s*ee Austin v. United States*, 509 U.S. 602

---

[1] Civil judicial forfeiture is an *in rem* action brought in court against the relevant property. Administrative forfeiture is a non-judicial *in rem* action which permits a federal seizing agency to forfeit the relevant property. Administrative forfeiture actions are authorized under the Tariff Act of 1930, 19 U.S.C. § 1607, for "merchandise the importation of which is prohibited; a conveyance used to import, transport, or store a controlled substance; a monetary instrument; or other property that does not exceed $500,000 in value." A Guide to Equitable Sharing of Federally Forfeited Property for State and Local Law Enforcement Agencies, U.S. Department of Justice, March 1994; *see City of Concord v. Robinson*, 914 F. Supp. 2d 696, 703 (M.D.N.C. Nov. 28, 2012).

(1993). This is because the Fourth, Fifth and Fourteenth Amendments declare sacrosanct individual property rights, and protect citizens from the deprivation of such rights without due process of law. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 61 (1993) (declaring that "[i]ndividual freedom finds tangible expression in property rights" and finding that though the Fourth Amendment limits the government's power to seize property for purposes of forfeiture, seizure must also comport with the Due Process Clause.).

However, the protections against self-incrimination in light of pending property forfeiture are coloured by the nature of the sanction and the posture of the proceedings. In fact, there is no *absolute* right protecting individuals from the choice of testifying in a civil matter and asserting a Fifth Amendment privilege. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080-81 (10th Cir. 2009). In determining whether a defendant should be afforded a safeguard against such a choice, the Court must consider the extent to which a defendant's Due Process rights are implicated because "allowing a civil case to proceed against a defendant who also may be subject to criminal prosecution involving the same matter may undermine the defendant's Fifth Amendment privilege." *See Id.*; *see also Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 225 (N.D. Ill. 2004). In particular, as it relates to a stay of civil proceedings with concurring and related criminal proceedings, a decision must be made on a case-by-case basis, in light of the circumstances and competing interests. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (internal citations omitted). The Ninth Circuit has articulated the following factors as precepts of such an analysis:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;

(4) the interests of persons not parties to the civil litigation; and

(5) the interest of the public in the pending civil and criminal litigation.

*Id*. While not wholly adopting the Ninth Circuit's factors, the Tenth Circuit has indeed taken *Keating*'s holding that any decision on whether to stay a civil proceeding pending the outcome of criminal proceedings "must consider the extent to which a party's Fifth Amendment rights are implicated," and has stated outright that certain rules, particularly those of invoking the Fifth Amendment in this context and the corresponding permissibility of drawing negative inferences therefrom, apply similarly to administrative proceedings. *Kreisler*, 563 F.3d at 1080; *MacKay v. DEA*, 664 F.3d 808, 819 (10th Cir. 2011) (deliberately likening "civil" proceedings to "administrative" proceedings as the terms were used in *Keating*).

"A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Kreisler*, 563 F.3d at 1080 (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76, 202 U.S. App. D.C. 345 (D.C. Cir. 1980)). And if a court decides not to stay a civil proceeding while the defendant's Fifth Amendment privilege is threatened, it must seek to accommodate such privilege by selecting a means which strikes a fair balance between both parties. *United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 644 (9th Cir. 2012) (finding that courts must seek to accommodate a defendant's right against self-incrimination in a civil forfeiture proceeding with means that strike a fair balance between both parties) (internal quotations and citations omitted).

## DISCUSSION

A preeminent feature of American Constitutional freedom, the Fifth Amendment has long shielded citizens from compulsory self-incrimination, and forfeiture penalties constitute the type

of sanction courts consider to be instruments of compulsion, at least at the preliminary stage of inquiry. U.S. Const. amend. V ("no person . . . shall be compelled in any criminal case to be a witness against himself."); *Austin*, 509 U.S. at 618 ("[This Court] consistently has recognized that forfeiture serves, at least in part, to punish the owner."); *see also United States v. Ursery*, 518 U.S. 267, 287 (1996) (forfeiture constitutes punishment except in instances where a high or specified threshold of punitiveness is necessary to trigger the violation of Constitutional freedoms, such as double jeopardy). It is likewise established that the privilege afforded by the Fifth Amendment may be invoked during a civil proceeding, whether formal or informal, which extends Fifth Amendment coverage to any stage of the discovery process for civil litigants. *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *see also Hobley*, 225 F.R.D. at 225; 8 Charles A. Wright et al., Federal Practice and Procedure § 2018, at 273 (2d ed. 1994) (the privilege against self-incrimination extends to questions at a deposition, responses to interrogatories, and requests for admissions or the production of documents).

Thus, little can be said to prevent Defendant from, at the very least, invoking the privilege with respect to the forfeiture proceedings presently pending against him, though there is no denying that this privilege burdens the Government; it deprives it of information potentially dispositive of otherwise unclear facts. *See SEC v. Graystone Nash, Inc*., 25 F.3d 187, 190 (3d Cir. 1994). Notwithstanding, invocation of the Fifth Amendment is a Constitutional privilege afforded to litigants rightfully claiming the privilege, and because there is no antithetical right of the burdened party to discovery of privileged matters, such parties generally have no recourse in a civil litigation other than the possibility of causing a trier of fact to draw a negative inference from the invocation of the privilege itself. *See United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 82-83 (2nd Cir. 1995) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318-20 (1976); *Brown v. United States*,

356 U.S. 148, 159 (1958) (Black, J., dissenting)). It is not surprising then that the Government seeks to prevent Defendant's use of the privilege by requiring him to concede his ownership of the property in order to prevent forfeiture under 18. U.S.C. § 983(2), and there is very little established legal authority preventing the Government from doing so.

This is because the Fifth Amendment silence privilege does not "free[ a litigant] from adducing proof in support of a burden which would otherwise have been his." *United States v. Rylander*, 460 U.S. 752, 758 (1983). A tension thus arises in the case at hand between the judicial limitations in a purely administrative, non-judicial forfeiture proceeding and the Defendant's right not to make incriminating statements that may be applied to his concurrent criminal proceedings. This tension is particularly acute here because Defendant must allege on the claims forms his ownership interest in the property at issue in the forfeiture, yet may be subject to criminal prosecution based on these very allegations of ownership.

Defendant thus "faces a dilemma." *See United States v. $ 250,000*, 808 F.2d 895, 900-01 (1st Cir. 1987). He must either invoke his Fifth Amendment right and remain silent, thus forfeiting his potential claims to the confiscated property, or make incriminating admissions as to said property. Defendant would have the Court solve this dilemma by granting his request for stay of forfeiture proceedings, and the Government would have the Court determine that the means which would otherwise solve Defendant's dilemma are not within its grasp due to the jurisdictional distinction between administrative and civil forfeiture claims.

First, this Court finds that Defendant's "dilemma" is legitimate. While this Court is not bound to the factors the Ninth Circuit sets forth in *Keating*, it nonetheless "must consider the extent to which a party's Fifth Amendment rights are implicated." *See* 45 F.3d at 324; *Kreisler*, 563 F.3d at 1080. Under *Cunnigham*, the Government is barred from sanctioning an individual for asserting

a Constitutional privilege against forced self-incrimination. 431 U.S. at 806. The forfeiture penalty is sufficient to satisfy "sanctioning" under this framework. *See U.S. Currency*, 626 F.2d at 15; s*ee also, generally, Austin*, 509 U.S. Whether framed as a preliminary administrative matter or an evidentiary probe, the claims forms made pursuant to § 983(2) offer Defendant no alternatives to the relinquishing of property or the Fifth Amendment privilege.

Second, this Court sees no reason to withhold Constitutional protections that apply to civil forfeiture proceedings from a Defendant presently forced to make the very same type of choice with the very same type of Fifth Amendment burden merely because the proceeding is in its administrative phase. It is true that the D.C. Circuit has found that a court will not grant judicial review of an administrative forfeiture where a defendant failed to have the case referred to the U.S. Attorney. *See Malladi Drugs and Pharmaceuticals, Ltd. v. Tandy*, 552 F.3d 885, 889 (D.C. Cir. 2009). However, *Tandy* involved a suit by a corporation for the return of federally seized pharmaceuticals; importantly, there was no Fifth Amendment silence privilege to protect, and thus no need for an analysis balancing the obvious benefits of requiring defendants to avail themselves of administrative processes against the perhaps more obvious Constitutional prohibitions on government compelled self-incrimination.

It is also true, as the Government contends, that filing a claim with the U.S. Attorney's Office would terminate the administrative forfeiture and allow for forfeiture proceedings to arise in federal court, thus bringing Defendant's Constitutional charge more clearly into this Court's jurisdiction. With this, the Court agrees. However, the Government can refer the matter to judicial proceedings as well, and has elected not to do so, placing Defendant between a self-incriminating rock and a due process hard place. To secure any potential right to the property, Defendant must acknowledge his ownership interest in said property. To remain silent with respect to the property,

avoiding the implications that his comments as to said property may have when introduced during his criminal proceedings, means foregoing his potential rights to the property notwithstanding the results of those proceedings. Defendant may choose, but either outcome burdens one of his rights under the Constitution—due process as to property, or silence, as the case may be. This Court is not convinced a defendant should be without remedy when forced to choose which edge of the statutory blade will sever these two Constitutional protections, but must agree with the Government on this point that civil forfeiture proceedings cannot be stayed when they do not yet exist.

For this reason, the Court looks to the Tenth Circuit, which has stated that certain rules, particularly those of invoking the Fifth Amendment in the civil context and the corresponding permissibility of drawing negative inferences therefrom, apply in equal measure to administrative proceedings. *MacKay*, 664 F.3d at 819 (equating "civil" proceedings to "administrative" proceedings in relation to drawing an inference from the invocation of the Fifth Amendment's right to silence). Just as a factfinder's ability to draw inferences from the invocation of the Fifth Amendment privilege in an administrative proceeding is confirmed in this circuit, it is equally sensible, perhaps even moreso, that invoking the right around which this entire tension revolves, as well as the corresponding protection of this right, is similarly protected and enforced, regardless of whether a proceeding is administrative or civil in nature. This is because, in both contexts, evidence derived from government compulsion may produce evidence against a defendant in concurrent criminal proceedings, in violation of a defendant's right to abstain from statements that yield exactly that result.

Because the Court agrees with the Government that there are not actual civil proceedings to stay pursuant to Defendant's Motion, and because the Court also agrees with Defendant that his

right to abstain from self-incrimination should be secured regardless of the procedural context in which it arises, the Court will instead order a remedy consistent with the principles of *$133,420.00 in United States Currency*, 672 F.3d at 643 ("We have recognized that courts must seek to accommodate the defendant's right against self-incrimination in a civil forfeiture proceeding.") (internal quotations omitted) (citing *United States v. Thirteen (13) Mach. Guns*, 689 F.2d 861, 864 (9th Cir. 1982) and *4003-4005 5th Ave.*, 55 F.3d at 84 ("courts should explore all possible measures in order to select that means which strikes a fair balance . . . and . . . accommodates both parties.")). To do so, this Court will refer to the Government's suggestion that Defendant file a motion in limine seeking to exclude the use of the claims forms as evidence in the Defendant's concurrent criminal trial. Rather than taking this suggestion wholesale, however, the Court will issue a protective order to the same effect of limiting "the use of the claim forms as evidence in the criminal case," for which the Government advocated. Doc. 62 at 3. The Court agrees with Defendant that a motion in limine invites needless litigation, Doc. 74 at 4, and may fail, upon the outcome of such litigation, to remedy the unconstitutional effects of § 983(2) as it restricts Defendant's ability to transfer the proceeding to the U.S. Attorney without stating his ownership interest in the seized property. Instead, while Defendant may be forced to make the statements if he intends to initiate judicial proceedings or to assert any right to said property, he can do so now knowing that there is no Constitutionally actionable harm, as the claims forms submitted in response to the Government pursuant to § 983(2) shall be sealed and protected from undue disclosure in Defendant's corresponding criminal trial.

## CONCLUSION

Defendant Mendoza's Motion to Stay Forfeiture Proceedings is hereby **DENIED** for the reasons described in this Memorandum Opinion and Order. The Court hereby enters the following

Protective Order with respect to the disclosure of the claims forms and the use of their contents

(the "Privileged Content"), subject to Defendant's filing of the claim with the U.S. Attorney within

the statutory 35 days required under § 983(2)(B), **extended by this Court for thirty (30) days**

**following the issuance of this Order**:

> Privileged Content may not be introduced in any criminal proceeding brought against Defendant by the United States Attorney for the District of New Mexico, except in connection with perjury charges or for purposes of impeachment.

**IT IS SO ORDERED.**

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**