# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                No. 1:20-cr-00688-WJ

JOSE MENDOZA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S MOTION TO RECONSIDER AND CLARIFYING THE ORDER DENYING DEFENDANT'S MOTION TO STAY FORFEITURE PROCEEDINGS AND PROTECTIVE ORDER AS TO DEFENDANT'S CLAIMS FORMS

**THIS MATTER** comes before the Court upon the Government's Motion for Reconsideration and Request for Clarification of Court's Order (Doc. 92) (the "Motion") regarding Defendant Mendoza's Motion to Stay Forfeiture Proceedings (Doc. 61). The Court has reviewed the pleadings, including the Government's reply filed on November 3, 2020 (Doc. 97), and for the reasons discussed herein, the Court finds that its Memorandum Opinion and Order Denying Defendant's Motion to Stay Forfeiture Proceedings and Protective Order as to Defendant's Claims Forms (the "Forfeiture Order") (Doc. 83) (1) is not an effective stay on administrative forfeiture proceedings, (2) does not ignore standing threshold requirements, and (3) does not confer to Defendant judicial immunity.

## BACKGROUND

On February 25, 2020, Defendant Jose Mendoza was indicted by a grand jury on conspiracy in violation of 21 U.S.C. § 846, distribution of 28 grams and more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), aiding and abetting in violation of 18 U.S.C. §

1

2, and use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b). Doc. 1; Doc. 3. Upon his arrest, an appraised $173,182 in firearms, magazines, ammunition, vehicles and cash was seized and became subject to forfeiture proceedings pursuant to 18 U.S.C. §§ 981(a)(1)(A), 1956(c)(7)(D) and 1961(1)(D), as well as 21 U.S.C. §§ 841, 881(b), 881(a)(11) and 881 (a)(6). *See* Doc. 61 at 2; Doc. 61-1 at 1-2. Following the arrest, an additional $30,162.63 was seized from ZIA Credit Union pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7) and 1961(1), as well as 21 U.S.C. §§ 881(a)(6) and 881(b). *See* Doc.61-1 at 6-13.

In April of 2020, Defendant was given notice of the Government's intent to proceed civilly to forfeit Defendant's ownership rights as to the seized property. Doc. 61-1. In said notice, Defendant was given certain options he had with respect to the forfeiture. *See* Doc. 61-1.

On April 29, 2020, Defendant motioned to stay forfeiture proceedings, contending (i) that 18 U.S.C. § 983(2), the statutory basis of the requirement that he as claimant identify the property and his interests in the property subject to forfeiture, is unconstitutional as applied to his circumstances, and (ii) that for Defendant to respond to the Government in any way sufficient to claim the property would violate his Fifth Amendment right against compulsory self-incrimination with respect to the concurrent criminal proceedings against him. *See* Doc. 61 at 2-3. The Court denied his Motion, but entered a protective order regarding his response to the Government as to administrative forfeiture. The Government now motions this Court to reconsider its Forfeiture Order on the alleged grounds that the Forfeiture Order amounted to a de facto stay on forfeiture proceedings, that Defendant lacked standing to motion for a stay on forfeiture proceedings, and that the protective order contemplated in the Forfeiture Order is tantamount to witness immunity. The Government also seeks to clarify the protective order.

## LAW

Motions to reconsider are proper in criminal cases though the Federal Rules of Criminal Procedure do not specifically provide for them. *See United States v. Healy,* 376 U.S. 75 (1964). A district court should have the opportunity to correct alleged errors in its dispositions. *See United States v. Dieter,* 429 U.S. 6, 8 (1976); *see also United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). In the criminal context, courts ordinarily apply the same standards as those used in civil cases when addressing motions to reconsider. *See United States v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010) (citing *Healy,* 376 U.S. at 84; *Dieter,* 429 U.S. at 6; *United States v. Ibarra,* 502 U.S. 1 (1991)) (stating that the Supreme Court of the United States has concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits) (internal quotations and citations omitted). A motion for reconsideration should not be used as a vehicle to present evidence that was available when the matter was initially adjudicated. See *Julianello v. K-V Pharm. Co*., 791 F.3d 915, 922 (8th Cir. 2015); *Anthony v. Runyon*, 76 F.3d 210, 215 (8th Cir.1996) (evidence presented on a motion for reconsideration "must be truly new, in the sense that it was previously unavailable").

A motion for reconsideration may only be granted in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l*, 2018 U.S. Dist. LEXIS 71109, n.2 (D. N.M. 2018) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (using the three factors to reconsider order under Rule 59(e))). Presumably, the Government's argument relies on (3) above, though it introduces new arguments not presented previously in response to Defendant's motion to stay proceedings.

3

## DISCUSSION

**I.      The Forfeiture Order is not an effective stay on administrative forfeiture proceedings**

On April 29, 2020, Defendant filed a Motion to Stay Forfeiture Proceedings (Doc. 61) in the instant case, wherein Defendant requested a stay of administrative forfeiture proceedings on Fifth Amendment grounds "until [Defendant's] criminal matter is resolved." Doc. 61 at 3. The Court denied the Motion, acknowledging that while Defendant's substantial property rights and his right to abstain from self-incrimination were put in direct opposition of one another by the Government's strategy to derive incriminating evidence through procedural requirements, the Court did not see it appropriate to broaden its jurisdictional limits when alternatives existed to remedy the potential constitutional violations at hand. The Government now contends that this denial was a de facto stay of administrative forfeiture proceedings and is thus unsupported by existing precedent or statute. The Court disagrees.

Importantly, citing 18. U.S.C. § 983(2), the Court indicated that Defendant's deadline to make a claims form response or refer his matter to the U.S. Attorney was extended for thirty days following the issuance of the Forfeiture Order. This extension was not made to circumvent restrictions as they apply to administrative forfeiture proceedings, but to allow Defendant sufficient time to file his response with the appropriate official under 18 U.S.C. § 983(2)(a) when the progression of the instant case had been halted and when the statutory deadline had tolled as a result of the Court's deliberation as to the constitutional predicament presented in Defendant's previous motion. Of equal importance, Defendant has since responded in accordance with the deadline, and the proceedings have not been prevented from continuing. Rather, this Court narrowed its Order as much as was possible while still ensuring that Defendant's constitutionally ensured protections were not threatened.

## II.     The Forfeiture Order did not neglect to consider standing requirements

The Government next contends that because Article III standing is a threshold issue in federal civil forfeiture cases, *see United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008), the Court had no grounds to consider Defendant's Motion to Stay Forfeiture Proceedings on the merits. Doc. 92 at 10.

However, as the Government insisted in its response to Defendant's Motion to Stay Forfeiture Proceedings, the proceedings as they currently stand are not civil, but rather, administrative, forfeiture proceedings. Furthermore, Defendant is not contesting the forfeiture, but rather the statutory feature requiring him to provide the Government with potentially incriminating statements in order for judicial forfeiture proceedings to commence against him. Government cites to one Tenth Circuit case, *United States v. $148,840 in United States Currency*, 521 F.3d 1268, 1273 n.3 (10th Cir. 2008), as ostensible support of its claim that Defendant lacked standing to request the protections afforded to him by the Court's Forfeiture Order. Doc. 92 at 10.

This case, however, is hardly applicable. First, the Court denied Defendant's motion for a stay of the forfeiture proceedings, turning instead to the wisdom of *United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 644 (9th Cir. 2012), which holds that in forfeiture proceedings, a court should accommodate a defendant's right against self-incrimination "with a means that strike a fair balance between both parties."  It should be noted that while *$133,420.00 in United States Currency* sets forth various standing requirements, these requirements apply to a defendant contesting forfeiture, namely at the motion to dismiss and trial stages of a civil forfeiture action. *See $133,420.00 in United States Currency*, 672 F.3d at 638. Importantly, Defendant here is faced with concurrent criminal proceedings which invoke his rights and call for an accommodation. This was not a consideration in the relevant analysis of *$133,420.00 in United*

*States Currency*; in fact, the status of the defendant's related criminal proceeding, if there was one at all, is not discussed. Furthermore, Defendant is not contesting forfeiture here, nor was his requested stay granted. Instead, the Court ordered protection on Defendant's response to the claims forms on the ground that Defendant's right to silence and property are at odds and that the claims forms' contents would undoubtedly create potentially incriminating and autogenously granted Defendant testimonial evidence, which the Court finds is harmonious to *$133,420.00 in United States Currency*'s finding that a court must craft a remedy which strikes a fair balance between the rights of the parties. Second, and consistent with this latter principle, the Court recognized that Defendant was forced either to relinquish his right to remain silent or his protected property rights and thus crafted a remedy that was quite limited—allowing for Defendant to request initiation of judicial, and properly "civil," forfeiture proceedings without staying the proceedings altogether until the conclusion of Defendant's concurrent criminal trial. It appears that this remedy is the true source of the Government's discontent, which shines a light on the very issue Defendant is faced with: the use of forfeiture to compel disclosure of self-incriminating evidence without which the Government may not have a strong enough case for conviction.

Even if the Court were to accept the Government's argument that the grant of protection over Defendant's response to the claims forms could be interpreted as some extension of Defendant's challenging of the administrative forfeiture proceedings on constitutional grounds, all Defendant must establish under Article III is (1) injury in fact—"an invasion of a legally protected interest which is concrete and particularized, and actual or imminent"— (2) a causal connection between the injury and the conduct complained of, and (3) the likelihood that the injury would be redressed by a favourable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) ("First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest

which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotations and citations omitted). It is true, "[c]laimants in *civil* forfeiture actions can satisfy this test by showing that they have a colorable interest in the property, which includes an ownership interest or possessory interest . . . " *$133,420.00 in United States Currency*, 672 F.3d at 637 (internal quotations and citations omitted) (emphasis added). However, this analysis is a reduction of the Supreme Court's foundational requirements for Article III standing for the purposes of clarifying that possessory interest in forfeitable property meets the parameters set forth in *Wildlife*, and the Court is not convinced that the Tenth Circuit's implementation of this abbreviated test was meant to replace the Supreme Court's foundational analysis on standing, particularly as it applies to specific and unique instances of government-imposed constitutional contradiction.

Here, the Government presents this simplification of the standing parameters, as they apply to civil forfeiture proceedings, in effect not to clarify that Defendant has demonstrable injury by virtue of forfeit property or constitutional violation, but rather to confine Defendant as though he had challenged the forfeiture directly at the motion to dismiss or trial stage of a judicial proceeding, as was the case in both *$133,420.00 in United States Currency* and *$148,840 in United States Currency*. When applied to the test in *Wildlife*, however, the facts support Article III standing, even though such standing need not be established with regard to the Forfeiture Order. First, under *Wildlife*, Defendant must show an injury, that is, "an invasion of a legally protected interest which

is concrete and particularized, or actual or imminent." 504 U.S. at 560-561. Defendant's Motion to Stay Forfeiture Proceedings illuminated the constitutional dilemma with which he is faced as a result of the claims forms requirements; in short, his injury is deprivation of constitutional privileges—forfeiture of property through non-judicial proceedings, or forced relinquishing of his protected right to assert his ownership of said property. Second, there must be a causal connection between the injury and the conduct complained of. *Id*. Defendant alleged the constitutional nexus between the claims forms requirement that he express an ownership interest in the subject property and the Fifth Amendment concern that expression of ownership will certainly be used as evidence against him in his criminal trial. The Court agrees. Third, it must be likely that the injury would be redressed by a favourable decision by the Court. *Id*. While Defendant's motion for stay was not granted, such a result may have been legally permissible on the same grounds as the protective order set forth in the Forfeiture Order—that the Court should make special efforts to accommodate the constitutional privilege against self-incrimination—and the outcome would have been favourable as Defendant could maintain his protected right to assert ownership of his property without surrendering his protected right to remain silent. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015), cert. denied, 136 S. Ct. 1374 (2016) (appellees had standing to pursue claims because potential harm derived from forfeiture of funds was fairly traceable to United States' conduct, a favourable federal court decision would afford appellees long-awaited opportunity to commence satisfaction, and civil forfeiture's typical standing requirements could not overcome the Act's sweeping mechanism for recovery). More importantly, the Court's grant of the protective order similarly solved the dilemma, with a notably lessened impact on the progression of Defendant's case and no impact whatsoever on the administration of the Government's forfeiture proceedings. Though Defendant's motion as well as

the remedy granted by this Court are not germane to the standing requirements alleged by the Government, Defendant would nonetheless meet the requirements if they were, as the dilemma Defendant plead with this Court is as particularized and cognizable as the limited remedy he was ultimately granted.

Furthermore, with regard to standing, only one case cited by the Government remotely shares in the facts at bar (though there are still key distinctions), *United States v. Salgado-Santana*, Case No. 00-0692, 2002 WL 34697221 (D.P.R. Feb. 14, 2002). This case concerns administrative forfeiture proceedings and claims forms response requirements similar to those faced by Defendant. In *Salgado-Santana*, the defendant requested a stay of three administrative forfeiture proceedings conducted by the FBI on the grounds that he "wish[ed] to exercise his right to challenge the forfeiture of the properties . . . but also wish[ed] to protect his Fifth Amendment right against self-incrimination while the criminal case [was] pending before the court." *Id.* at *1. Citing cases endorsing a stay of civil proceedings as a means of addressing the Fifth Amendment issue faced by the defendant and his pending criminal proceedings, a Magistrate Judge recommended a stay, stating that it was "the best course to avoid any conflict between the administrative forfeiture proceeding and the criminal case . . . " *Id.* The government objected, stating (1) that the Court lacked jurisdiction (as was done here with regard to Defendant's previous motion for stay), (2) that the agency already entered declarations of forfeiture (as has occurred here), and (3) that the administrative process was complete. Next, the Magistrate Judge in *Salgado-Santana* recommended that the non-judicial forfeiture conducted by the FBI be vacated and that the forfeiture proceedings be stayed until the conclusion of the criminal case. *Id.* at *2. Ultimately, the Federal District Court of Puerto Rico disagreed on the grounds that a stay made the improper assumption that the movant was a lawful claimant in a civil forfeiture proceeding when claimant

did not allege ownership of the contested property under 18 U.S.C. § 983(a)(2)(C), and thus, as the Government argues is the case here, lacked standing to contest the proceedings.

This Court, however, as the Government attempts to soften in its Motion for Reconsideration, did not grant Defendant a stay, and in fact, avoided doing so. Rather, the Court granted a limited protective order on the self-incriminating contents of Defendant's response to the claims forms at odds with Defendant's Fifth Amendment right. This explains why the Government first alleges in the Motion that a 30-day extension of a deadline amounts to a de facto stay of forfeiture proceedings; without this assumption, the nexus drawn by the Government between the cited case law and the Government's argument holds no water. As explained above, the Forfeiture Order is not a stay in name or effect, but instead a carefully crafted solution to Defendant's constitutional dilemma consistent with the Tenth Circuit's incorporation of *Keating*, a solution resulting from the Court's careful consideration of the extent to which Defendant's Fifth Amendment rights are implicated, *See MacKay v. DEA*, 664 F.3d 808, 819 (10th Cir. 2011); *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080-81 (10th Cir. 2009), and decisions made "on a case-by-case basis, in light of the circumstances and competing interests." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (internal citations omitted). Ultimately, the Court refers instead to *United States v. Becker*, which adopted the Second Circuit holding that, when faced with a Defendant forced either to remain silent or allow forfeiture with the presence of a concurrent criminal case, district courts must make special efforts to "accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision," and which further stated that while the government in that case correctly argued that the defendant did not file a petition asserting interest in the subject property, the argument that the defendant lacked standing to make the motion was

"disingenuous" because "the entire premise of [the defendant's] motion to continue is that to submit that petition would require her to incriminate herself." 2011 WL 836743 (D. Kan. 2011) (citing *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995)) (quoting *United States v. United States Currency*, 626 F.2d 11, 15 (6th Cir. 1980), cert. denied, 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 290 (1980)).

The remedy granted by the Court certainly represents an accommodation of both constitutional privilege and the legislative intent behind forfeiture provisions, *see Becker*, 2011 WL at *3; as a result, Defendant is not forced to incriminate himself with regard to his concurrent criminal trial, the subsequent judicial forfeiture may still proceed as usual with Defendant able to contest and the Government able to present its case as it normally would, and no added administrative burden results excepting those that may have arisen from decisions by the U.S. government and Customs and Border Patrol to ignore or improperly address the Court's Forfeiture Order and allow forfeiture in spite of the Defendant's extended deadline to respond to the claims forms. The only natural consequence of the Court's grant of a protective order over Defendant's response to the claims forms is the resulting inability of the Government to use the claims forms to coerce self-incrimination, and the Court is not convinced that the legislative intent behind 18 U.S.C. § 983(2) was to establish an avenue by which the Government may administratively derive information otherwise shielded by the Fifth Amendment.

**III. The Court did not confer Defendant witness immunity, but rather tailored a limited remedy consistent with applicable law**

The Government next contends that the Court conferred immunity in violation of its jurisdictional boundaries. Namely, the Government cites the portion of *$133,420.00 in U.S. Currency* which finds that a claim may be stricken when a claimant invoked the Fifth Amendment in response to questions meant to probe his standing. 672 F. 3d at 641-43. Additionally, the

11

Government cites to *United States v. Serrano*, 406 F. 3d 1208, 1217-18 (10th Cir. 2005), which states that a district court did not have the inherent authority to grant witness immunity in that case in the "interest of justice."

First, the Government's argument is dubious. As has been stated herein, *$133,420.00 in U.S. Currency* is hardly analogous to the case at bar, the most important distinctions being a lack of parallel criminal proceedings set forth in the analysis (if they existed at all in that case) and the opposed constitutional privileges present here; the case's connection to the subject facts is simply too attenuated for the Government's argument on this point to apply. If anything, *$133,420.00 in U.S. Currency* advises the employment of judicial mechanisms to "strike a fair balance between both parties," a balance which, when confronted with the constitutional dilemma faced by the subject Defendant and *not* apparently faced by the defendant in *$133,420.00 in U.S. Currency*, undoubtedly necessitates protections against coercive measures to derive self-incriminating statements in exchange for an ability to defend important and constitutionally protected property rights. *See* 672 F.3d at 644. The same discrepancies exist with respect to the Government's reliance on *Serrano*. The witnesses Serrano and Franco in *Serrano* were not criminally charged, and as Defendant aptly stated, if they were, they would not need judicially constructed immunity because they would be "cozily ensconced in the full warmth and protection of the Fifth Amendment." Doc. 94 at 8.

Second, and most importantly, the Court's remedy is no example of conferred immunity at all. The Court's Order was captioned as a protective order, and that is precisely what it is. Though debatably unique, the measure taken by the Court was in keeping with the sensible wisdom of the circuits faced with similar facts, as well as the Supreme Court, both of which call in these disorderly constitutional debacles for nuanced remedies regarding with deference the requirements

of the Constitution. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[T]he assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case [the Defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."); *see also $133,420.00 in United States Currency*, 672 F.3d at 644 ("We have recognized that courts must seek to accommodate the defendant's right against self-incrimination in a civil forfeiture proceeding.") (internal quotations omitted) (citing *United States v. Thirteen (13) Mach. Guns*, 689 F.2d 861, 864 (9th Cir. 1982); *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 82-83 (2nd Cir. 1995) ("courts should explore all possible measures in order to select that means which strikes a fair balance . . . and . . . accommodates both parties.")). The *Simmons* Court found that statements made to establish standing in the context of litigating a Fourth Amendment violation could not be used against the criminally accused, and as the Defendant notes, that is strikingly similar to what this Court has done in granting its protective order over the contents of the claims forms; this is no veiled immunity, but rather a limited remedy to the diametric positioning, by the Government, of two of Defendant's constitutional rights.

## IV.     Clarification as to Defendant's deadline extension

Citing 18. U.S.C. § 983(2)(B), the Court held in the Forfeiture Order that the contents of the claims forms may not be introduced in criminal proceedings brought against Defendant by the U.S. Attorney for the District of New Mexico, subject to two exceptions, and required Defendant

to have his response filed with the U.S. Attorney by the thirty-day deadline issued by the Court. For clarification, § 983(2)(B) sets forth the deadline for filing, which this Court extended in the Forfeiture Order. § 983(2)(B) references 18. U.S.C. § 983(2)(A), which requires the response to the claims forms be filed with "the appropriate official," for example, were Defendant to seek to escalate the forfeiture to judicial proceedings, a referral to the U.S. Attorney. The Court rather specified the U.S. Attorney *as* the appropriate official, which is incorrect. However, the context and discussion set forth in the Forfeiture Order made its intent clear, and Defendant correctly understood the Forfeiture Order as requiring him to lodge his response to the claims forms[1] within 30 days from the issuance of the Forfeiture Order consistent with the statutory requirements referenced by the Court.

## CONCLUSION

For the reasons described in this Memorandum Opinion and Order, the Court finds that there are no clear errors of law in the Forfeiture Motion, and accordingly, the Government's Motion for Reconsideration is hereby **DENIED**.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] As set forth in the Government's Motion, the appropriate official received the claims forms from Defendant on September 29, 2020, following the Forfeiture Order. Doc. 92 at 4.